445 So.2d 1264 (1984)
STATE of Louisiana, Appellee,
v.
William WILLIAMS, Jr., Appellant.
No. CR83-730, CR83-731.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
Rehearing Denied February 29, 1984.
Writ Denied April 23, 1984.
*1265 Patricia A. Thomas, Abbeville, for appellant.
Louis G. Garrot, III, Asst. Dist. Atty., Abbeville, for appellee.
Before FORET, YELVERTON and KNOLL, JJ.
FORET, Judge.

NUMBER CR 83-730
On June 19, 1981, William Williams, Jr. (defendant) was charged by indictment of the Vermilion Parish Grand Jury with committing the offense of aggravated rape upon one Nanette Marie Callier Broussard (the victim), in violation of LSA-R.S. 14:42. In addition, the same grand jury charged defendant with committing the offense of armed robbery of the victim, in violation of LSA-R.S. 14:64. Subsequently, on June 26, 1981, defendant was charged by indictment of the Lafayette Parish Grand Jury with committing the offense of aggravated kidnapping of the victim, in violation of LSA-R.S. 14:44.
Prior to trial, defendant filed a motion to consolidate the two indictments and the motion was granted. Defendant was tried by a jury in Vermilion Parish, which returned three unanimous verdicts, finding defendant guilty of each of the offenses with which he was charged. On May 31, 1983, defendant was sentenced as follows:
For aggravated kidnapping, life imprisonment; for aggravated rape, life imprisonment; and for armed robbery, thirty years imprisonment, all at hard labor without benefit of parole, probation, or suspension of sentence, and all to run consecutively.
Defendant appeals from his convictions and sentences, and makes the following assignments of error:
(1) The trial court's denial of defendant's motion to suppress evidence which was allegedly obtained as the result of improperly suggestive police procedures;
(2) The trial court's denial of two motions for continuance filed by defendants;
(3) The trial court's denial of defendant's "MOTION FOR ADDITIONAL TIME TO FILE PRE-TRIAL MOTIONS"; and
(4) The trial court's failing to follow the guidelines set forth in LSA-C.Cr.P. Article 894.1 in sentencing defendant, and in imposing an excessive sentence on him.

FACTS
On the evening of June 4, 1981, the victim traveled from Abbeville to Lafayette to visit a friend, Michelle Mouton. At the time, she was twenty-two years old. The two women went to LaFonda's Restaurant for dinner at approximately 9:30 P.M., where they remained for about an hour. After that, they went to J.R.'s Saloon, and eventually met Michelle's boyfriend, Phillip Broussard, there. Around midnight, the victim decided to drive Michelle's automobile back to her apartment, where she was to spend the night, and she obtained Michelle's automobile and apartment keys for this purpose.
When the victim reached a dimly-lit area in J.R.'s parking lot and began to unlock the automobile, an unknown male armed with a knife accosted her and told her that he would kill her if she did not do as he said. He then ordered the victim to unlock the door on the driver's side and to get into the automobile, and to unlock the door on *1266 the passenger's side and push it open. After that, he ran to the other side of the automobile and got in, telling the victim to drive where he told her to go. He then forced the victim to drive to Maurice, where they turned left on La. Highway 92, and proceeded toward Milton. After driving a short distance down La. 92, the victim was directed to pull over to the shoulder of the highway.
The attacker then dragged the victim from the automobile, through a ditch, under a barbed wire fence, and across a bean field into a briar patch. He then forced her to partially remove her clothing, choked her and struck her in the face when she tried to escape, and raped her. Thereafter, he ordered the victim to dress, but she was unable to find all of her clothing in the dark bean field. He then took thirty cents from the victim's purse.
Thereafter, they returned to the automobile, but this time the attacker drove. When they neared Broussard, he stopped the automobile and fled on foot. The victim drove back to Ms. Mouton's apartment, and the Lafayette City Police were alerted as to what had happened. They in turn alerted the Vermilion Parish Sheriff's Office, as it appeared that the rape and armed robbery had occurred in that parish. The victim was transported to Abbeville General Hospital where she was examined by Dr. Ardley Hebert, the Vermilion Parish Coroner. He utilized a standard rape kit in conducting his examination and found evidence of sexual activity. Vaginal swabbings obtained at this time were sent to the Acadiana Regional Criminalistics Laboratory where they tested positive for the presence of semen.
Later, the victim returned to Lafayette to view mug shot books in an attempt to identify her assailant, but was unable to do so. Accompanied by a sheriff's deputy, she retraced the route taken during the abduction in an attempt to locate her missing clothing, but was unsuccessful. However, two days after the crimes occurred, the victim and some friends once again retraced the abduction route and were able to locate the bean field where the rape had taken place, along with the victim's missing clothing and other personal items. They then went to the spot where defendant had exited the automobile and noticed that it was located near a trailer park/campground facility.
While driving through this trailer park, the victim spotted her attacker (the defendant) standing among a group of men. She became upset and nauseous at the sight of defendant. Apparently, she noticed him as he pointed at their automobile, telling them that they had a flat tire. Defendant then entered a van, and the victim's friends recorded the license number. Shortly thereafter, they called the police and returned to Lafayette. They gave the police the items they had found in the field and the license number of the van. On June 9, 1981, the victim returned to the trailer park with Detective Dale Broussard. She was once again able to identify defendant as her assailant. Detective Broussard noticed that defendant had a strong body odor and a tattoo (both characteristics had been mentioned by the victim in the description she had given to the police), and he was arrested. Defendant's fingerprints were taken and matched by an FBI expert with prints found in the automobile used in the abduction. Defendant was subsequently indicted on the charges noted above.

ASSIGNMENT OF ERROR NUMBER 1
Defendant contends that the trial court erred in denying his "MOTION TO SUPPRESS IN COURT IDENTIFICATION". In his motion, defendant argued that the trial court should have suppressed any evidence of an in court identification by the victim of himself as the alleged perpetrator of the crimes with which he was charged on the ground that the original identification by the victim was made under circumstances suggesting that he was the perpetrator of said crimes. The "original" identification of which defendant complains was made on June 9, 1981, when the victim met Detective Broussard at the trailer park.
However, defendant overlooks the fact that on June 7, 1981 (two days after *1267 the crimes were committed), the victim positively identified him as being the man who raped her, while riding through the trailer park with some friends. Plaintiff testified that there was no doubt at all in her mind at this time that defendant was her assailant, and that she became ill upon seeing him. Certainly, there was nothing in the random manner in which the victim rode through the trailer park, viewing the occupants thereof, which could have suggested to her in any way that defendant was the one who had attacked her. All of the cases cited by defendant in support of his argument are concerned with procedures employed by the police in helping victims and witnesses to identify the perpetrators of crime. In the case sub judice, the police were in no way involved in the initial identification of defendant by the victim. Thus, there is no merit to defendant's argument.

ASSIGNMENT OF ERROR NUMBER 2
Defendant argues that the trial court erred in denying two motions for continuances filed by him. The first was filed on April 25, 1983, and set forth the following ground therefor:
"The names of the arresting officers, any other police officers and anyone else who may have been present at the time Nanette Marie Callier Broussard made identification of William Williams, Jrs. [sic], as the alleged perpetrator of the crime is presently unknown to the undersigned counsel, and such names are necessary to subpoena them for the Motion to Suppress In Court identification."
We have already found that there was no basis whatsoever for defendant's motion to suppress the victim's in court identification of him, and that the trial court properly denied said motion. Thus, we find no abuse of discretion by the trial court in denying the motion for a continuance filed by defendant on April 25, 1983.
Defendant filed a second motion for a continuance on May 6, 1983, ten days prior to trial. There were two grounds set forth in this motion. The first was that more time was needed to provide an opportunity for a hearing on two issues raised in a motion to quash. We will discuss this ground first.
In his motion to quash, defendant set forth the following grounds as the basis for his motion. The first was that the district attorney had failed to furnish him with a sufficient bill of particulars after having been ordered to do so by the trial court. The second was that the certificate of analysis by the FBI (Report of Latent Fingerprint Section, Identification Division) was deficient in that it failed to comply with LSA-R.S. 15:499.
LSA-C.Cr.P. Article 535 provides, in pertinent part:
"A. [Not applicable]
B. [Not applicable]
C. A motion to quash on grounds other than those stated in Paragraphs A and B of this Article shall be filed in accordance with Article 521.
D. The grounds for a motion to quash under Paragraphs B and C are waived unless a motion to quash is filed in conformity with those provisions.
E. The court may, in order to avoid a continuance, defer a hearing on a motion to quash until the end of the trial."
As can be seen, defendant's motion to quash is governed by the provisions of LSA-C.Cr.P. Article 535(C), which "shall be filed in accordance with Article 521".
LSA-C.Cr.P. Article 521 provides:
"Art. 521. Time for filing of pretrial motions
Pretrial motions shall be made or filed within fifteen days after arraignment, unless a different time is provided by law or fixed by the court at arraignment upon a showing of good cause why fifteen days is inadequate.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions."
The record shows that defendant was formally arraigned on the armed robbery and aggravated rape charges on January 27, 1983. He was given thirty days to file pretrial motions. His motion to quash was *1268 filed on May 6, 1983, and was, therefore, untimely filed. Similarly, defendant was formally arraigned on the aggravated kidnapping charge on April 6, 1983, and was given twenty days to file pretrial motions. Thus, his motion to quash was also untimely filed with respect to this charge. Under the provisions of LSA-C.Cr.P. Article 535(D), defendant waived the grounds on which he based his motion to quash. As will be shown, defendant made no showing of good cause such that the trial court should have allowed him additional time to file pretrial motions.
For these reasons, we agree with the trial court's refusal to grant defendant's motion for a continuance based on the ground that more time was needed to provide an opportunity for a hearing on his motion to quash.
The second ground set forth in defendant's second motion for a continuance was that more time was needed for defendant to prepare an adequate defense. The record shows that defendant retained counsel to represent him in this matter shortly after his arrest. However, several months later, this counsel filed a "MOTION TO WITHDRAW AS COUNSEL OF RECORD" on the ground that,
"... the services, recommendations and advice of defendant's attorney can no longer be extended to defendant as he is now a fugitive at large, having escaped from the Vermilion Parish jail ...".
The record shows that defendant escaped from the Vermilion Parish jail on two more occasions, but was recaptured each time. On one occasion, defendant remained a fugitive at large for a number of months.
On March 23, 1983, the trial court appointed counsel to represent defendant at a sanity hearing, after which it was determined that he had the mental capacity to proceed to trial. Subsequently, defendant retained present counsel to represent him in these proceedings. On April 8, 1983, counsel was given notice that defendant's trial was to begin on May 16, 1983. Thus, counsel had approximately two months to prepare for trial. Defendant argues that this was an insufficient amount of time for him to adequately prepare his defense. We disagree.
LSA-C.Cr.P. Article 712 gives the trial court discretion to grant a continuance if good grounds for such are shown. As a general rule, the denial of a continuance is not grounds for reversal absent an abuse of discretion and a showing of specific prejudice caused by the denial. State v. Haarala, 398 So.2d 1093 (La.1981); State v. Durio, 371 So.2d 1158 (La.1979); State v. Hammontree, 363 So.2d 1364 (La.1978).
It is our opinion that defendant failed to make a showing that good grounds existed for the granting of a continuance. His numerous escapes from the Vermilion Parish jail were the most significant factors limiting the amount of time he had to prepare his defense. Also, defendant has failed to make any showing of specific prejudice resulting from the trial court's refusal to grant his motion for a continuance. Thus, the trial court properly denied his motion[1].

ASSIGNMENT OF ERROR NUMBER 3
Defendant contends that the trial court erred in denying his Motion for Additional Time to File Pretrial Motions. He relies on his arguments, advanced in assignment of error number 2, in support of his contention. Similarly, for the reasons assigned by this Court in assignment of error number 2, we find no merit to defendant's contention. Defendant made no showing of good cause for being allowed additional time to file pretrial motions. See LSA-C.Cr.P. Article 521.

*1269 ASSIGNMENT OF ERROR NUMBER 4
Defendant contends that the trial court erred in sentencing him to two consecutive life sentences and a consecutive thirty-year sentence, all at hard labor, without benefit of parole, probation, or suspension of sentence. He further contends that the trial court failed to comply with the provisions of LSA-C.Cr.P. Article 894.1, which sets sentencing guidelines to be used by the trial courts in imposing sentences on defendants.
In contending that the trial court erred in imposing consecutive sentences on him, defendant relies on LSA-C.Cr.P. Article 883, which provides:
"Art. 883. Concurrent and consecutive sentences
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently." (Emphasis ours.)
The record shows that the trial court expressly directed that all of the sentences imposed on defendant be served consecutively, as provided for in LSA-C.Cr.P. Article 883. Further, the trial court noted that defendant had two prior felony convictions.
In State v. Molinario, 400 So.2d 596 (La.1981), the court stated, on page 600, that:
"This court has recognized concurrent rather than consecutive sentences as the general rule for convictions arising out of a single course of criminal conduct at least for a defendant without a previous criminal record and in the absence of a showing that the public safety requires a longer sentence. State v. Ortego, 382 So.2d 921 (La.1980); State v. Underwood, 353 So.2d 1013 (La.1977). However, we have never held that, if convictions arise out of a single course of conduct, consecutive sentences will necessarily be found to be excessive. Other factors must be considered. State v. Ortego, supra. Moreover, the trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentences imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Jacobs, 383 So.2d 342 (La.1980); State v. Spencer, 374 So.2d 1195 (La. 1979)."
In light of defendant's prior record and his propensity for violence, we conclude that the trial court did not abuse its discretion in imposing consecutive, rather than concurrent, sentences in the instant case.
Finally, we find no merit to defendant's argument that the trial court erred in failing to articulate the guidelines set forth in LSA-C.Cr.P. Article 894.1, in imposing sentence on him. Two of the crimes for which defendant was convicted carry mandatory sentences of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Thus, it would have been an exercise in futility for the trial court to set forth those factors indicating that a sentence of imprisonment should have been imposed on defendant, and those factors indicating that a suspended sentence or probation would be proper, when it had no discretion in sentencing defendant.
In State v. Parker, 416 So.2d 545 (La. 1982), the court rejected the argument that mandatory life sentences unconstitutionally denied defendants the right to have the trial court exercise its discretion in imposing sentences under LSA-C.Cr.P. Articles 893 and 894.1. On page 552, Parker stated that:
"The decision to assess mandatory life sentences for certain felonies is within the prerogative of the legislature."
We find no merit to any of the assignments of error raised by the defendant.

*1270 DECREE
For the reasons assigned, defendant's convictions and sentences are affirmed.
AFFIRMED.

NUMBER CR 83-731
For the reasons assigned this date in State v. Williams, 445 So.2d 1264 (La.App. 3 Cir.1984), with which the instant case was consolidated at trial and on appeal, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We note that, in his brief filed in this Court, defendant argues that lack of time for preparation of his defense resulted in specific prejudice to him in that he did not have enough time to locate witnesses who could have corroborated his wife's testimony, which provided him with an alibi. However, a review of the motion for a continuance filed by defendant on May 6, 1983, shows that it meets none of the requirements of LSA-C.Cr.P. Article 709, which mandates that certain facts be set forth in a motion for a continuance based upon the absence of a witness. Thus, we will not consider defendant's argument.