NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-442

STATE OF LOUISIANA

VERSUS

JERRY ANTHONY BRANDON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR2011-6016
HONORABLEPATRICIA C. COLE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

ELIZABETH A. PICKETT
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and J. David Painter, Judges.

AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.

Herbert Todd Nesom
District Attorney, Thirty-third Judicial District
Joe Green
Assistant District Attorney
P. O. Box 839
Oberlin, LA 70655
(337) 639-2641
COUNSEL FOR APPELLEE:
    State of Louisiana

**Edward Kelly Bauman**
**Louisiana Appellate Project**
**P. O. Box 1641**
**Lake Charles, LA 70602-1641**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Jerry Anthony Brandon**

**Jerry Anthony Brandon**
**ALC, Earth A-2**
**3751 Lauderdale Woodyard Road**
**Kinder, LA 70648**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Jerry Anthony Brandon**

**PICKETT, Judge.**

## FACTS

On October 4, 2011, Melissa Strother was working the morning shift at a convenience store in Allen Parish. As she was getting herself a snack, a masked man walked in with a pistol. He pulled back the hammer and announced that he was robbing the store. He ordered Strother to get down, and she complied.

At his command, she opened the cash register, and he removed approximately three hundred and fifty dollars in currency from it. The robber then ordered Strother into the beer cooler and told her to stay there for several minutes. She exited the cooler immediately after he left the store, however, and saw him steal her car. She promptly alerted the authorities. The ensuing investigation led to the defendant's, Jerry Anthony Brandon's, arrest and confession.

On December 13, 2011, Jerry Anthony Brandon and a co-defendant, David A. Funderburk, II, were charged with armed robbery, a violation of La.R.S. 14:64; theft of $500 or more but less than $1,500, in violation of La.R.S. 14:67; conspiracy to commit armed robbery, in violation of La.R.S 14:26 and La.R.S. 14:64; theft of $1,500 or more, in violation of La.R.S. 14:67; and obstruction of justice by tampering with evidence, in violation of La.R.S. 14:130.1. A jury trial began on September 17, 2012. On September 19, the state dismissed the second count (theft), before the jury began hearing evidence. On September 21, said jury found the defendant guilty of armed robbery, conspiracy to commit armed robbery, theft of property having a value greater than $1,500, and obstruction of justice.

On September 28, 2012, the state charged defendant as a second habitual offender, pursuant to La.R.S. 15:529.1. On January 31, 2013, the Court found the

defendant to be a second habitual offender and sentenced him to forty-nine and on-half-years at hard labor.

The defendant now seeks review by this court, assigning two errors through appellate counsel. He assigns three more errors *pro se*, but one of these is substantially similar to the first counsel-filed assignment.

## ASSIGNMENTS OF ERROR

Through appellate counsel, the defendant asserts two assignments of error:

1. The trial court erred in denying defense counsel's request for a recess and in proceeding with the trial without Jerry Brandon's presence.

2. The trial court erred in imposing an excessive sentence.

The defendant asserts three assignments of error on his own behalf:

3. Whether the trial court's decision to continue on with the trial in defendant's absence violated his rights under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment of the United States Constitution, and the Louisiana State Constitution, Article 1, § 13.

4. Whether the trial court's decision in denying defendant's Motion for Continuance based on inadequate notice of trial denied him Due Process of Law, Equal Protection of the Law, and fundamental fairness.

5. Whether the evidence presented at trial was sufficient to support the verdict.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find one error patent.

As noted above, the defendant was convicted of armed robbery, conspiracy to commit armed robbery, theft of property having a value greater than $1,500, and

obstruction of justice. However, the trial court imposed a sentence on the armed robbery conviction only.

The State filed a habitual offender bill which provided as follows:

H. TODD NESOM, DISTRICT ATTORNEY for the Thirty-third Judicial District, Parish of ALLEN, State of Louisiana, here gives the Court to understand and be informed that:

Jerry Brandon, is a habitual offender, Second Offense, in violation of LA R.S. 15:529.1, having been previously convicted as follows:

The District Attorney for the Thirty-third Judicial District Court, for the State of Louisiana, charges that heretofore the same defendant, Jerry Brandon, was convicted on the 1st day of October, 2004, in the 11th Judicial District Court, Parish of Sabine, State of Louisiana, in the matter entitled State of Louisiana vs. Jerry Brandon, criminal docket number 58726, for the offense of Altering a Prescription, La. R.S. 40:971;

And that the same defendant, Jerry Brandon, was convicted on the 21st day of September, 2012, in the 33rd Judicial District Court, Parish of Allen, State of Louisiana, in the matter entitled State of Louisiana vs. Jerry Brandon, criminal docket number 2011- 6016, for the offenses of Armed Robbery, La.R.S.. 14:64; Criminal Conspiracy to Commit Armed Robbery, La R.S. 14:26; Theft of $1500 or more, La. R.S. 14:67 and Obstruction of Justice, La. R.S. 14:130.1.

contrary to the law of the State of Louisiana and against the peace and dignity of the same.

At sentencing, the trial court stated in pertinent part:

In the current matter Mr. Brandon was convicted by a jury on September 21st, 2012, of the offenses of Armed Robbery, Conspiracy to Commit Armed Robbery, Theft of property valued at fifteen hundred dollars or more, and Obstruction of Justice. He has not yet been sentenced on those matters.

. . . .

Court finds that the current conviction makes Jerry Brandon, the defendant herein, a second felony offender.

. . . .

[T]he Court found that you were a second felony offender under the habitual offender law having previously been convicted of the

3

Altering a Prescription, which we just went over, in the 11th JDC. As such, the habitual offender statute, the sentence, has a mandatory minimum sentence, shall be not less than one half the longest term nor more than twice the longest term prescribed for a first conviction. In this case, the longest term is for Armed Robbery. And, as Mr. Deshotels said, that would be one half of ninety-nine (99) years or forty-nine and a half (49.5) years. That is the mandatory minimum. And of course the maximum would be two time [sic] ninety-nine (99) or a hundred and ninety-eight (198) years.

. . . .

You are being sentenced to Count one of the Habitual Offender Bill. I have already explained how the habitual offender bill works and how that impacts a sentence. The Court sentences you to serve forty-nine and a half (49.5) years at hard labor with the Department of Corrections, and said sentence is to be served without benefit of probation, parole or suspension of sentence. That is the mandatory minimum.

The trial court failed to impose a separate sentence on each the remaining convictions, conspiracy to commit armed robbery, theft, and obstruction of justice. Therefore, this court is remanding these convictions to the trial court to impose a separate sentence on each conviction.

## SUFFICIENCY OF THE EVIDENCE

We will address the defendant's fifth assignment of error first, as it attacks the sufficiency of the trial evidence. A holding that the evidence was insufficient would necessitate an acquittal, thus obviating any need to address the other assignments of error. *State v. Hearold*, 603 So.2d 731 (La.1992).

The structure of a sufficiency analysis is settled:

When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact

4

> finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The defendant argues that the main witness who testified against him, his accomplice Funderburk, was not credible. Also, he states that his confession stemmed from a desire to protect April Thompson, the mother of his children. Thompson is also Funderburk's sister. Both Thompson and Funderburk testified for the state. The latter pled guilty to obstruction of justice before defendant's trial. He admitted helping the defendant by driving a getaway car and hiding the gun. He identified the defendant as the robber.

The defendant notes that Funderburk related different versions of the relevant events at various times, including an implication that Thompson was the getaway driver. At trial, Funderburk admitted to giving different versions of events at different times. Further, he admitted to committing perjury in the allocution at his guilty plea hearing. However, on re-direct, he testified that in each version of events he related, the defendant was the robber. The main variable in Funderburk's various statements is the role his sister played (or did not play) in the crime.

Thompson testified that on the day of the offense, the defendant came home with her brother and told her he was going to pay the light bill. He stated he had obtained the money "from the store."

5

Ms. Strother testified to the events that occurred at the store. She testified that a masked gunman committed the robbery. Ms. Strother described the masked gunman as having a stocky build. Ms. Strother testified the robber's build was more like the defendant's than Funderburk's.

The defendant testified on his own behalf and denied being involved in the robbery. He acknowledged that he had given police a statement confessing to the crime. He stated that he did so because he thought it would help Thompson keep her children. He also acknowledged writing a letter to the district attorney's office indicating that she was involved in the crime, not Funderburk. In that letter, he confessed to involvement in the crime. During his testimony, the defendant alleged that police misconduct occurred in relation to the taking of his confession, in that officers told him what to say. He also testified that a detective's earlier testimony that no pre-interview occurred was untrue.

It is clear that the defendant and Funderburk each related different versions of events in various statements and writings. This court is not in a better position than the jury to assess the credibility of each man. As noted earlier in *Kennerson*, appellate courts do not second-guess fact-finder's credibility determinations.

More specifically, this court has explained:

> This court will overturn a jury's credibility assessment only when a witness's own testimony demonstrates that the witness's ability to perceive events was impaired in some way. *See, e.g.*, *State v. Bourque*, 94-291 (La.App. 3 Cir. 11/2/94), 649 So.2d 670, wherein one eyewitness had consumed a large amount of alcohol before the offense and the other was a minor who believed all white men looked alike, and defendant was white.

*State v. Hypolite*, 04-1658, p. 5 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, 1279, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381. The present case involves no question of any witness's ability to perceive the events as they occurred.

Therefore, the jury's credibility assessment will stand. When viewed in a light most favorable to the prosecution under the *Jackson* standard, there is sufficient evident to support the conviction.

For the reasons discussed, this assignment of error lacks merit.

**REQUEST FOR A RECESS AT TRIAL**

In his first and third assignments of error, the defendant complains that trial court erred by denying trial counsel's request for a recess at the beginning of the last day of trial. The defendant alleges, as counsel did at trial, that he was in an emergency room with chest pains. We note the following colloquy:

THE COURT:

> Be seated. Good morning, we are in criminal session. We are ready for closings and closing instructions today. What I have been advised is that, Mr. Deshotels, you have been contacted by your client, and he has advised you that he is at the emergency room.

MR. DESHOTELS:

> Yes, Your Honor.

THE COURT:

> Have you been able to verify in any way that that is correct?

MR. DESHOTELS:

> Other than speaking to April Funderburk, April Thompson, she corroborated that.

THE COURT:

> All right. The Court is of a position since the evidentiary phase of the trial is completed the Court is not going to delay the trial in this matter. I understand that you have an objection to that, Mr. Deshotels.

7

MR. DESHOTELS:

Yes, Your Honor.

THE COURT:

And the State's position is that we continue. Is that correct?

MR. GREEN:

That is correct, Judge.

THE COURT:

That is what the Court has decided to do. What I will do is, when the jury comes in I will advised them the defendant has contacted his attorney this morning and has advised Mr. Deshotels that he is ill and cannot be here today. Since the evidentiary phase of the trial has completed he is allowed to waive his presence for the closings and we can finish the trial without his being here. In the instructions I have put an instruction in the closings saying, the defendant may waive his appearance from his trial or any portion of his trial. If he does so no presumption [of] guilt may be raised. So, with that are we ready for closings?

MR. GREEN:

We are, Your Honor.

THE COURT:

Mr. Deshotels?

MR. DESHOTELS:

Yes, Your Honor.

THE COURT:

All right. Bring in the jury.

(THE JURY IS PRESENT AND SEATED IN THE COURTROOM)

THE COURT:

Be seated. Good morning. We are ready for the closing arguments, closing instructions, and your deliberation today.

This morning, the reason we are late is the defendant, Mr. Brandon, has contacted his attorney this morning and advised his attorney, Mr. Deshotels, that he is ill and cannot be here today. Since the evidentiary portion of the trial has been completed, remember closing arguments are not evidence, then he is allowed to waive his presence for the closings and we can finish the trial without his being here. And I am going to instruct you that there can be no presumption of guilty [sic] because he is not here today, because he has that right to waive his appearance. And so that is what we will do so we won't be delayed any longer.

At the hearing on the motion for new trial, the parties and the court revisited the issue:

THE COURT:

All right. As I said I am ready to rule. And I am gonna assume that he was, that he did go to the emergency room.

MR. DESHOTELS:

Thank you, Judge.

THE COURT:

Mr. Brandon didn't appear on the day of the closing arguments. That is the day we are talking about. The evidence portion of the trial was completed as Mr. Green said. Mr. Brandon left a message on Mr. Deshotels' phone stating that he had to go to the emergency room. You passed that message on to me, Mr. Deshotels, along with Mr. Green. I think y'all both came to the office. You had told him, perhaps, and then y'all came to the office. I asked for you to get confirmation from the hospital, and you were unable to do so. You told the Court, in court, that you were only able to speak with April Funderburk who is his on-again/off-again, girlfriend, and she said that they were at the hospital, but nothing from the hospital. That is what you indicated to the Court. Is that correct?

MR. DESHOTELS:

Your Honor, my memory is not that great. But if that is your - -

THE COURT:

I listened to what was said.

MR. DESHOTELS:

All right.

THE COURT:

And you indicated that you hadn't been able to get confirmation from the hospital, only from Ms. Funderburk. At that time the Court believed that this was a dilatory tactic on the part of the defendant and that his absence was voluntary. And since the evidence portion of the trial [was] completed I ordered that the trial proceed without his presence. Before closings I advised the jury that the defendant, Mr. Brandon, had contacted his attorney this morning and has advised Mr. Deshotels that he is ill and cannot be here. I didn't say you waived your presence. I said you would be allowed to waive your presence.

MR. BRANDON:

It says in my minutes - -

THE COURT:

I know what the minutes say. I listened to what I said. And that is what I said. And in the instructions I placed that a defendant was allowed to waive his presence at trial. That is to address any kind of prejudice that might arise. You had even testified the day before about your heart problems and that you were under stress because of these charges. You had told the jury that. So they were aware that you had problems. Mr. Brandon, you knew that proof of your medical emergency was necessary. That is why we are having this hearing today. Already in this case you have had to provide proof. You used a faxed copy from the ER for one of the bench warrants that had been obtained. Because actually there were two bench warrants obtained. There was a bench warrant issued on the first time this matter was set for trial, when you didn't appear for your trial on May 21st, 2012. You didn't appear on that day. A bench warrant was issued. You were set again for trial on July 16th, 2012. And a second bench warrant was issued because you didn't appear for trial. This was the third time you were set for trial and you didn't appear. So, you knew that you had to have some kind of proof from the hospital for today's hearing because you had to have that to get that other bench warrant recalled. You even used that faxed copy to try to get a continuance on the first day, that is September 17th, whenever

we were set for trial. You had access to a cell phone because you left a message - -

MR. BRANDON:

I wasn't - -

THE COURT:

You had access to a cell phone because you left a message with Mr. Deshotels.

MR. BRANDON:

Yes, ma'am.

THE COURT:

And then he actually had to contact you later that morning to say that you had been convicted. You didn't attempt to provide any sort of proof to the attorney about the emergency room. You could have had that faxed to him. You knew his phone number and you could have called him for the fax number.

MR. BRANDON:

When I talked he told me - -

THE COURT:

You never made further contact with your attorney, he contacted you to let you know what the verdict was. You admitted that you left the hospital whenever you found that out. You never contact[ed] the Court after you left the hospital. You never reported back to the Court after you left the hospital. I believe you said you were arrested or you went to your house to be arrested. So, the Court still does not believe that your absence from the trial was involuntary, and that there was no evidence presented today to change the Court's opinion. The Court does not find that your absence was involuntary and I deny your Motion for New Trial on that ground.

As the defendant observes, La.Code Crim.P. art. 831 requires that a defendant be present at certain stages of criminal proceedings. However, he notes that La.Code Crim. P. arts. 831(A)(6) and 832(A)(1) provide an exception to this

11

rule for a defendant who voluntarily absents himself from criminal proceedings. As shown in the trial court's remarks, the issue was evidentiary. The defendant has failed to produce any proof that his absence from trial was involuntary. While his earlier cardiac difficulties lend some plausibility to his argument, they do not demonstrate the absence at issue was due to a medical necessity.

His *pro se* constitutional argument fares no better because of the same absence of proof that his absence was involuntary. This court has observed:

> [I]n *State v. Humphrey*, 576 So.2d 1104 (La.App. 3 Cir.1991), where the defendant was released from his bond obligation the morning of trial and failed to appear on the second day, we held that the defendant's absence was voluntary. We further stated that there was no error in the trial court's decision to proceed with the trial in the defendant's absence and, by his voluntary absence, the defendant "waived any rights he may have under Article 831, the Louisiana Constitution, *or the Sixth and Fourteenth Amendments to the United States Constitution.*" *Id.* at 1105. *See also State v. Russell*, 98-682 (La.App. 5 Cir. 1/13/99); 726 So.2d 444, *writ denied*, 99-0469 (La.6/18/99); 745 So.2d 19; *State v. Mackey*, (La.App. 3 Cir. 12/11/96); 687 So.2d 465, *writ denied*, 97-1814 (La.3/13/98); 712 So.2d 865; and *State v. Smith*, 587 So.2d 62 (La.App. 4 Cir.1991).

*State v. Graves*, 01-156, pp. 6-7 (La.App. 3 Cir. 10/3/01), 798 So.2d 1090, 1094, *writ denied*, 02-29 (La. 10/14/02), 827 So.2d 420 (emphasis added). Citing the federal constitution does not provide the defendant with any increased right to be voluntarily absent from his trial, nor does it obviate the need for evidence to support his contention that said absence was involuntary.

For the reasons discussed this assignment lack merit.

## EXCESSIVE SENTENCE

In his second assignment of error, the defendant argues his forty-nine-and-one-half-year habitual offender sentence was excessive. He also claims the trial court failed to state a factual basis for the sentence on the record. He acknowledges that the term is the mandatory minimum pursuant to La.R.S.

15:529.1. There was no motion to reconsider sentence. La.Code Crim.P. art. 881.1(E) states:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

In one of this court's earlier cases, *State v. Bamburg*, 00-675 (La.App. 3 Cir. 11/2/00), 772 So.2d 356, the defendant failed to object to the sentence at the sentencing hearing and did not timely file a motion to reconsider sentence. Thus, this court found his claim of excessiveness of sentence was barred. *See also State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59.

On the other hand, this court has reviewed excessiveness claims despite the lack of an objection and motion to reconsider sentence. *See State v. Johnlouis*, 09-235 (La.App. 3 Cir. 11/4/09), 22 So.3d 1150, *writ denied*, 10-97 (La. 6/25/10), 38 So.3d 336, *cert. denied*, __ U.S. __, 131 S.Ct. 932 (2011); *State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127; *State v. Perry*, 08-1304 (La.App. 3 Cir. 5/6/09), 9 So.3d 342, *writ denied*, 09-1955 (La. 6/25/10), 38 So.3d 352; *State v. H.J.L.*, 08-823 (La.App. 3 Cir. 12/10/08), 999 So.2d 338, *writ denied*, 09-606 (La. 12/18/09), 23 So.3d 936; *State v. Quinn*, 09-1382 (La.App. 3 Cir. 5/12/10), 38 So.3d 1102, *writ denied*, 10-1355 (La. 1/7/11), 52 So.3d 885. In the interest of justice, we will review the defendant's argument as a bare claim of excessiveness.

This court has explained the analysis:

> The Eighth Amendment to the United States Constitution and La. Const. art. I, § 20 prohibit the imposition of cruel or excessive punishment. " '[T]he excessiveness of a sentence becomes a question of law reviewable under the appellate jurisdiction of this court.' " *State v. Dorthey*, 623 So.2d 1276, 1280 (La.1993) (quoting *State v.*

*Sepulvado*, 367 So.2d 762, 764 (La.1979)). Still, the trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, we will not deem as excessive a sentence imposed within statutory limits. *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. However, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for us to consider on review is not whether another sentence would be more appropriate, but whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

The fifth circuit, in *Lisotta*, 726 So.2d at 58, stated that the reviewing court should consider three factors in reviewing the trial court's sentencing discretion:

1. The nature of the crime,

2. The nature and background of the offender, and

3. The sentence imposed for similar crimes by the same court and other courts.

*State v. Whatley*, 03-1275, pp. 5-6 (La.App. 3 Cir. 3/3/04), 867 So.2d 955, 958-59.

However, as already noted, the sentence at issue was the mandatory minimum required by statute. As this court has explained:

This court has held that when the trial court has no discretion to deviate from a legislatively mandated sentence, failure to articulate reasons as generally required by La.Code Crim.P. art. 894.1 is not an error since it would be futile to do so at sentencing, unless the sentences are constitutionally excessive. *State v. Williams*, 445 So.2d 1264 (La.App. 3 Cir.), *writ denied*, 449 So.2d 1346 (La.1984) and *State v. Dorthey*, 623 So.2d 1276 (La.1993). *See also State v. Armstrong*, 32,279 (La.App. 2 Cir. 9/22/99); 743 So.2d 284, *writ denied*, 99-3151 (La.4/7/00), 759 So.2d 92.

In a case such as the instant case, where one of the sentences was a mandatory sentence and the other a mandatory minimum sentence, the Defendant has the burden to rebut the presumption that the sentences are unconstitutional by clear and convincing evidence, showing that:

[she] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that

14

are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstance of the case.

*State v. Young*, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 531, *writ denied*, 95-3010 (La.3/22/96), 669 So.2d 1223.

Defendant has failed to meet her burden of showing how she is exceptional under the circumstances. Except for reciting the law regarding the general requirements for an adequate sentencing procedure, Defendant does not give any reason why her consecutive sentences are excessive.

*State v. Pierre*, 02-277, p. 15 (La.App. 3 Cir. 6/11/03), 854 So.2d 945, 954, *writ denied*, 03-2042 (La. 1/16/04), 864 So.2d 626.

The defendant makes no attempt to demonstrate that his case is so exceptional as to justify a downward departure from the mandatory minimum sentence. For the reasons discussed, this assignment lacks merit.

## MOTION FOR A CONTINUANCE OF THE TRIAL

In his fourth assignment of error, the defendant argues the trial court erred by denying his motion for continuance, which was based upon an allegation of inadequate notice of trial. On September 17, 2012, a Monday, the defendant made an oral motion for continuance. He also asked for a bench warrant to be withdrawn. The court heard testimony by the defendant that he had missed a July court date due to a hospitalization. The defendant also claimed that he did not learn of his court date until the Friday immediately preceding trial. He appeared on that date and was offered a plea bargain, which he refused. According to the defendant, he was told of his trial date after he was arrested due to the bench warrant. During his hearing testimony, he supplied documentation showing the dates of his hospitalization.

The supreme court has explained:

> We have consistently held that the decision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. [*State v.] Bourque*, 622 So.2d [198] at 225 [(La. 1993)]; *see* LA.CODE CRIM. PROC. ANN. art. 712. In addition, this Court generally declines to reverse convictions even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. *Bourque*, 622 So.2d at 225; *State v. Champion*, 412 So.2d 1048, 1051 (La.1982).

*State v. Manning*, 03-1982, p. 30 (La. 10/19/04), 885 So.2d 1044, 1077, *cert. denied*, 544 U.S. 967, 125 S.Ct. 1745 (2005).

Defense counsel noted that he made numerous attempts to contact the defendant, but counsel had the wrong address, even though the defendant had supplied the trial court and the State with the correct address in open court on July 10, 2012. It is not clear why the defendant did not receive counsel's telephone calls. Counsel stated he had two numbers for the defendant, who merely stated that his wife's number had been changed.

On appeal, the defendant notes that the bench warrant was issued based upon a failure to appear on July 16. However, the record shows that on July 16, the trial court granted the defendant's motion for continuance, which was filed on July 13. At that time, trial was reset from July 16 to September 17. Nonetheless, the defendant failed to appear on July 16, apparently due to his hospitalization.

We note the following colloquy:

[Defense Counsel:]

Q.     Now, Mr. - - I am gonna correct you.

A.     Okay.

Q.     You called my office, not Friday - -

A.     Uh huh (yes).

16

Q.  - - but you called my office about Wednesday.

A.  No, it was Thursday.

Q.  You called my office Thursday.

A.  Thursday evening when I talked - - after I talked to my bail bondsman, he told me what was going on. I called your office and I called the office here.

Q.  So, by at least Thursday you were aware that this trial was set.

A.  I didn't - - no, I didn't know there was a trial set for Monday.

Q.  You and I talked - -

A.  No, I did not know there was a trial set for Monday. I knew I had to come in for this specific reason to get my bond taken care of because I was in fear of having it taken.

MR. GREEN:

July 16th, was a trial date that he was supposed to show up.

THE COURT:

Yes, sir. That is correct. This has been going on - - what is the docket number?

MR. GREEN:

Your Honor, it is 2011-6016.

THE COURT:

All right. A trial date was set for - - the reason that the bench warrant was issued because you didn't show up for trial. You did not show up for trial.

MR. BRANDON:

A pre-trial.

THE COURT:

No. Was it a trial date?

17

MR. NESOM:

It was set for trial according - -

MR. GREEN:

It was a trial date, Robyn?

MR. BRANDON:

It was a pre-trial. You told me it was a pre-trial.

THE COURT:

Hold on.

MR. DESHOTELS:

I don't know.

THE COURT:

You were served to come for trial. You didn't show up. That is why the bench warrant was issued. So, this matter has been ongoing for quite some time. If you did not get with your attorney to prepare for trial at that time the Court has no reason to believe that you would have gotten together with your attorney to prepare for this trial. So, your Motion - -

MR. BRANDON:

I would have.

THE COURT:

- - Your Motion for Continuance is denied. The Bench Warrant is recalled.

Defense counsel announced he was ready to proceed.

The defendant cites *State v. Jones*, 94-1142 (La.App. 3 Cir. 4/5/95), 653 So.2d 109, 111 *writ denied*, 95-1055 (La. 9/29/95), 660 So.2d 856, for the principle that a criminal defendant must have sufficient notice of trial to summon witnesses. In *Jones*, this court granted relief on a state appeal regarding a quashed

indictment. In its discussion, the court noted that the defendant had at least three years to prepare for trial. In the present case, the defendant had approximately seven months to prepare by the time of the July trial setting. Accepting that the defendant did not have actual notice of the September trial date, his counsel had approximately two more months to prepare and apparently did so. As mentioned above, counsel stated he was ready to proceed after the trial court denied the continuance. Further, having reviewed the trial record in connection with the earlier sufficiency analysis, we find counsel appears to have mounted a competent defense.

The present case is distinguishable from another case the defendant cites, *State v. Dawson*, 316 So.2d 109 (La.1975), because in that case there was no time for either the defendants or their counsel to prepare. They did not receive actual notice, and counsel was not appointed until the day of trial.

Further, even if an error occurred regarding the defendant's request for a continuance, it is not reversible, pursuant to *Manning*, because the defendant has not shown specific prejudice. The defendant names three witnesses that he says he would have called to testify if he had received actual notice and thus had time to subpoena them. He alleges that the first, Joey Busher, was incarcerated with the defendant and Funderburk and could have testified about their conversations, which indicated the defendant's confession was false. He also claims that David A. Funderburk, Sr., the father of Funderburk and Thompson, could have testified that he threatened the defendant, causing him to give a false confession. Further, he says Funderburk's girlfriend and someone named Quentin West could have testified regarding Funderburk's plan to rob the store.

At this stage of proceedings, there is no information to verify the defendant's claims. It is possible that his argument, and the relevant record, could be developed in the post-conviction process.

In its present posture, the assignment lacks merit.

## **CONCLUSION**

The convictions are affirmed. The sentence imposed for the armed robbery conviction is affirmed. This matter is remanded to the trial court for imposition of a separate sentence on each of the remaining convictions, conspiracy to commit armed robbery, theft more than $1,500.00, and obstruction of justice.

**AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS.**